No. 14,097.

PEOPLE EX REL. ATTORNEY GENERAL *v.* LASKA.
(126 P. [2d] 500)

MR. JUSTICE BAKKE, dissenting.

I respectfully dissent from the order of the Court denying reinstatement of the petitioner to the bar. I voted for his disbarment following his conviction in the federal court, and I would vote to disbar any attorney under the same circumstances.

Now, the picture, as it pertains to this petitioner, has completely changed. He was charged with and convicted of, an offense against the Federal Government. For that offense he served a long sentence in the federal penitentiary. The Federal Government—the agency he offended—finds that he has paid the penalty and has given him parole. I know that this does not amount to a pardon, but the element of forgiveness is inescapably present, and in that I join, although for no sentimental or personal reasons, because I do not even know the man.

There is another and a stronger reason in law why petitioner should be reinstated. Anyone who has given serious study to the theory and practice of parole—now practically universal in our jurisprudence—must realize that the part that rehabilitation plays in the parole program is basic. As I see it, the purpose of parole is to afford an opportunity to the offender to reestablish himself as an honorable and useful member of society. Payment of the penalty due society is presumed and the public generally—the court included—should lend a hand to make rehabilitation possible. How can this be accomplished when a man is denied the right to engage in the trade or profession in which he is trained? The petitioner has engaged in the practice of law exclusively for many years. He is no longer young and it would be difficult, if not impossible, for him to find new means of livelihood at his advanced age. No good purpose is served in denying this petition.

For myself, I am perfectly willing to say to him, "Go, and sin no more," confident that my faith would be justified.

MR. JUSTICE HILLIARD dissenting.

This is an application by respondent for restoration to the roll of attorneys, whence his name was stricken by order entered February 5, 1940. *People ex rel. v. Laska,* 105 Colo. 426, 101 P. (2d) 33. Our authority to the end sought is predicated on power to reinstate, which is co-extensive with the power we exercised when striking his name. It otherwise is referred to as the exercise of power "in the nature of a pardon." *People ex rel. v. Essington,* 32 Colo. 168, 75 Pac. 394. In the latter case the application was supported by Honorable Moses Hallett, Honorable E. T. Wells, Honorable G. Q. Richmond, L. W. Wells, Esquire, and F. C. Goudy, Esquire, all of

eminence as judges and at the bar in their day. The court was pleased to set forth the names of those who thought the respondent should be reinstated, and to recognize the legitimacy and potency of an appeal from distinguished citizens.

In a short formal order, the court here has denied respondent's application for reinstatement. The gravity of the question, as I conceive, required that an opinion be written by the court, in which reasons prompting the order would appear, and to that end I cast a futile vote. Further, and in the interest of my conception of justice, I voted to afford opportunity to respondent's counsel to make oral argument, a privilege which they had requested in due form. My vote was noneffective. The offer of Honorable Ralph L. Carr, Governor of Colorado, to appear before the judges and discuss the matter in behalf of the respondent, and to "submit copies of the brief and argument," presented by him in the federal court, was ignored by the court in its consideration of the petition here.

The decision in the proceeding which resulted in respondent's disbarment appears in *People ex rel. v. Laska, supra*. The court opinion is short, but in a dissenting opinion I reviewed the matter at length. So far as there shall be interest in even-handed justice, I invite study of that analysis.

When the proceeding in disbarment against respondent was presented, fourteen men, ranking in importance with any similar number to be found in Colorado, not only appeared and testified to his good character and reputation, but in great detail demonstrated the manner in which he was "railroaded" to conviction. Their names, as well as a digest of what each said, appear in my dissenting opinion. Not a soul offered adverse testimony. I closed my dissenting opinion with the following state-

ment: "My conclusion is that Laska's trial in the federal court was a travesty, and his imprisonment cruel and inhuman. Judgment of disbarment in this proceeding is a fitting climax to what preceded." I repeat and emphasize the statement here.

Now he is before us, a man nearly or quite seventy years of age, asking to be restored to that status which will enable him to follow the only calling which has claimed his devotion through the years. He is supported by an array of Colorado's ranking citizens. Honorable J. Foster Symes, judge of the United States District Court of the Tenth Circuit which includes Colorado, who has known respondent for years, and, after stating that he has "conducted himself uprightly and according to law," added that he was pleased to endorse "his application for reinstatement." The Honorables George F. Dunklee, Joseph J. Walsh, and Floyd F. Miles, judges of the Second Judicial District of Colorado (Denver), who have known respondent as only judges may know a lawyer, recommend him for reinstatement. Honorable John C. Vivian, lieutenant governor of Colorado, Honorable Gail L. Ireland, attorney general of Colorado, Honorable James T. Burke, district attorney for the Second Judicial District of Colorado, all speak of respondent in terms of commendation, and urge his restoration to the roll. In like manner, two prominent members of the bar, Charles T. Mahoney, Esquire, and David Rosner, Esquire, endorse respondent's petition for reinstatement.

Governor Carr's letter is written with courage and in clarity. He has knowledge of the situation beyond that of any living man. The Governor knows that Laska did not have a fair trial, and, as he says, and as I have demonstrated in great detail in my dissenting opinion in the disbarment proceeding, the crime of which he was convicted was not a crime at the time of his alleged of-

fense. I quote the Governor's letter, a letter unanswered and unanswerable:

> "The State of Colorado
> Executive Chambers
> Denver
>
> November 28, 1941

"Ralph L. Carr
  Governor

"To the Honorable Chief Justice and
Associate Justices of the
Supreme Court of Colorado

"Gentlemen:

"I am writing this letter in support of the application of Ben Laska for reinstatement as a member of the Bar of your Court.

"I was probably as well advised of the facts and circumstances surrounding the case in which he was found guilty of a violation of the Federal laws and sentenced to the Federal Penitentiary at Leavenworth as any other person outside of the principals, I believe. As you probably know, with my associates I prosecuted his appeal to the Circuit Court of Appeals for the Tenth Circuit of the United States and argued the case personally at Oklahoma City. Thereafter, with my associates I prepared a petition for a writ of certiorari addressed to the United States Supreme Court.

"I am firmly convinced that Laska was convicted of a crime which was never committed. Further, I am satisfied that no statute existed which would have justified his trial and sentence at the time of the alleged commission of the act and up until two days before the argument of this case on appeal to the Circuit Court. I felt that the conduct of his trial in the first instance was one of the most error-laden trials which I have ever encountered. Matters were received in evidence against Laska which were not even remotely connected with

him or with his alleged misconduct and which tended to influence the minds of the jury, I verily believe.

"Under all the circumstances, I feel that Laska was tried and convicted on a reputation which may or may not have been entirely justified. He has served his time in the penitentiary, and I think in serving the ends of justice that he should be reinstated and permitted to practice law again in Colorado. Had he been tried and convicted of some misconduct of which he was guilty, I would undoubtedly have taken a different position. But I verily believe that an injustice was done in this case, and I think the Bar and Court of Colorado are big enough to right a wrong of such kind, even at a late date.

"I shall be happy to talk with the members of the Court personally or to give you my reasons more in detail for this letter and will also be happy to submit copies of the brief and argument which I prepared, filed and presented in his behalf.

"Respectfully yours

"Ralph L. Carr, Governor of Colorado."

To Governor Carr, who introduced the subject in his letter, I yield the privilege of rewriting his appraisement of the court. For myself, I venture the belief that even a lesser Burns, his soul ablaze with the visitation here, might well conceive a greater line than "Man's inhumanity to man." I leave to my majority brethren whatever of peace the severity of their judgment may afford them. As a member of the court, I dissent from it. As a free man, I challenge and denounce it, and as a just man, I reject it utterly.